UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALVIN FRAZIER,

      *Plaintiff,*

    *v.*

CLOTHFELT and
SCHUBRING,

      *Defendants.*

_____/

CASE NO. 19-CV-10389
DISTRICT JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(ECF No. 48), PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL
(ECF No. 47), AND PLAINTIFF'S MOTION TO STRIKE (ECF No. 53)**

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment, (ECF No. 48), be **GRANTED**, and that Plaintiff's Motion for Appointment of Counsel (ECF No. 47) and Plaintiff's Motion to Strike (ECF No. 53) be **DENIED** as moot.

## II.    REPORT

### A.    Introduction

On February 7, 2019, Plaintiff Alvin Frazier, who appears before the Court *pro se*, filed this complaint under 42 U.S.C. § 1983 alleging that Defendants retaliated against him for filing civil rights lawsuits. (ECF No. 1, PageID.1-22.)

1

This Court granted Plaintiff's motion to proceed *in forma pauperis*. (ECF No. 10.) On July 11, 2019, Judge Lawson entered an order of partial summary judgment dismissing all but two of the thirty-five Defendants. (ECF No. 14.) The parties participated in a conference per the Pro Se Early Mediation Program on January 21, 2020, but no settlement was reached. The Court adopted a Report and Recommendation, granting Plaintiff's motions to amend his complaint. (ECF No. 36.)[1]

Pretrial matters were assigned to the undersigned magistrate judge on January 27, 2020. (ECF No. 33.) The two remaining Defendants, Amy Clothfelt[2] and Tim Schubring, filed the instant Motion for Summary Judgment on May 28, 2020, (ECF No. 25), based on failure to exhaust administrative remedies, to which Plaintiff responded and Defendants replied. (ECF Nos. 52, 54.) Below, I summarize the allegations set forth in the instant Motion, as well as allegations in the complaint insofar as they correspond to the relief sought at this juncture.

In addition, Plaintiff filed a second Motion to Appoint Counsel on May 12, 2021 (ECF No. 47), and a Motion to Strike, filed on July 29, 2021. (ECF No. 53.) These motions will also be addressed herein.

### B.    Factual Background

---

[1] While the Court allowed Plaintiff to amend his complaint, it then *sua sponte* dismissed the allegations in the new complaint (which were essentially unchanged from the original) except for the remaining allegations against Clothfelt and Schubring. (*See, e.g.*, ECF No. 36, PageID.283, 285, 297, 299-300.)

[2] In their motion, Defendants spell this name as "Coffelt." I will use the spelling as listed in the docket, which is "Clothfelt," for consistency.

Defendant Clothfelt works as the Jackson Correctional Facility ("JCF") Food Service Director and Defendant Schubring as the JCF Facility Manager. (ECF No. 48, PageID.355.)

In his complaint, Plaintiff alleges that Defendants denied him certain food service jobs based on his race and gave those jobs to less-qualified white prisoners. (ECF No. 1, PageID.16.) Plaintiff alleges that he liked his job in the "chow hall" and was fired because of a "false fight"—Plaintiff alleges this "false fight" occurred because he was next in line to work for the commissary. (*Id*. at PageID.17.) Plaintiff alleges that the "[false fight] incident was created by white working inmates that has segregated the jobs in the dish tank area with white inmates only on 2nd shift[.]" (*Id*.) Specifically, regarding Clothfelt and Schubring, Plaintiff alleges that they were "supervisors" who showed "favoritism of other inmates […] and was giving his job back by a fellow prisoner of his work peers of supervisors race who is a white male inmate." (*Id*. at PageID.16.) He also alleges, regarding Clothfelt, that "he told all SCC members that temp side kitchen have a race problem issue when it comes to certain jobs and color people being fairly placed in job pools, and Ms. Clothfelt (JCF) food service supervisor even if a person of color are up for a job in commissary job pools, and qualify and signed up other white men inmates always get granted those jobs and are showed favoritism who less qualify [than] other inmates." (*Id*. at PageID.11.) Plaintiff alleges that he told Clothfelt, among other employees, that "even if a person of color are [sic] up for a commissary job and qualify and has signed up, that other white inmates always get granted the job, and showed favoritism[.]" (*Id*. at PageID.14.)

### C.     Summary Judgment Standard

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant his motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such a motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a *pro se* party's arguments are entitled to liberal construction, "this

4

liberal standard does not, however, 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

### D.   Governing Law

#### 1.   PLRA

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") in response to a "sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of

nonmeritorious [prisoner civil rights] claims [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress equipped the PLRA with several mechanisms designed to reduce the quantity and increase the quality of the claims that came to federal court. *Id.* A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement: "No action shall be brought with respect to prison conditions under [§ 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000); *see also Woodford*, 548 U.S. at 84 ("A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision.") (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Courts consider the PLRA's suits "brought with respect to prison conditions" to include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The *Woodford* Court held that the PLRA's exhaustion of administrative remedies mandate requires both (1) that no remedies currently remain available, and (2) that the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at 93. Prior to *Woodford*, there were conflicting interpretations of the PLRA's exhaustion requirement. Some circuits interpreted the exhaustion requirement to mean that plaintiffs must have no more administrative remedies available before bringing their cases to federal court. *Id.* Others interpreted it to mean that plaintiffs must have "properly" exhausted their available remedies by following the agency's procedural requirements such as "deadlines

and other critical procedural rules." *Id.* "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id*. at 90. Complaints and appeals must be filed "in the place, and at the time, the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In *Jones*, the Court instructs us to look to the prison's policy itself when determining "whether a prisoner has properly exhausted administrative remedies—specifically, the level of detail required in a grievance to put the prison and individual officials on notice of the claim." 549 U.S. at 205; *id.* at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." (emphasis added)). The *Jones* Court was determining whether a plaintiff needed to identify the defendant by name during the initial grievance process. Since the MDOC's policy at the time did not require that level of specificity, the Court did not find that the PLRA required it. *Id.* at 218. However, the current MDOC policy requires this level of specificity. MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). *See also* MDOC PD 03.02.130 (eff. March 18, 2019) ("Information provided shall be limited to the facts involving the issues being grieved (i.e., who, what, when, where, why, how.) Dates, times, places and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130(S) (eff. March 18, 2019)).

A plaintiff does not need to show proper exhaustion as a part of their complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is an affirmative defense. *Id.*

### 2.      MDOC Policy

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC PD 03.02.130 (eff. July 9, 2007); MDOC PD 03.02.130 (eff. March 18, 2019).[3] The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control." MDOC PD 03.02.130(P) (eff. July 9, 2007).

If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(V) (eff. July 9, 2007). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X) (eff. July 9, 2007). The policy provides the following instructions regarding the information that needs to be included in a grievance:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

---

[3] Although the MDOC policy effective March 18, 2019 supersedes the July 9, 2007 policy, a majority of Plaintiff's grievances, including the ones analyzed here, were filed before 2019, so I will refer to the 2007 policy in this section. *See also* ECF No. 48-2, Defendants' exhibit citing to the 2007 policy.

MDOC PD 03.02.130(R) (eff. July 9, 2007). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB) (eff. July 9, 2007). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF) (eff. July 9, 2007). "To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form . . . ." *Id.* The Step III response concludes the administrative grievance process. According to MDOC policy, a grievance is not complete until the MDOC has responded to the Step III grievance. MDOC PD 03.02.130(B), (FF), (GG) (eff. July 9, 2007). *Woodford* and *Jones* require inmates to file grievances that conform to MDOC procedures in order to properly exhaust available remedies. 548 U.S. at 93; 549 U.S. at 218.

### E.   Analysis

Defendants argue Plaintiff's failure to exhaust administrative remedies against them as a defense to Plaintiff's claims. (ECF No. 48.) Specifically, they argue that although Plaintiff filed numerous grievances, none of them sufficiently named or identified Clothfelt or Schubring. (*Id*. at PageID.363.) "Moreover," Defendants argue, "none of the grievances alleged that he was discriminated against when he attempted to obtain a food services job." (*Id*.)

Plaintiff addresses the issue raised in the present motion in a grievance identified as JCF-18-10-2139-28e. (ECF No. 48-3, PageID.412.) In this grievance, which was received at Step II on October 10, 2018, Plaintiff wrote "I tried many times talking with staff

members that was involved in my situation about my issue I was discriminated against . . . employees have not had training in areas of race relations . . . ." (*Id*.) In an attachment dated November 10, 2018, Plaintiff writes "[I] had been working as a laundry porter over a year, I did priority to signing off assignment reclass. . . . [due] to my issue I did not have my serv safe that is a required certification for any inmate to have for to be a production cook[.]" (*Id*. at PageID.410.) In a November 14, 2018 grievance, at Step I, Plaintiff wrote "I reclassified priority for job pools I qualified for and was not cleared for any of the three job[s] I ask for . . . the job I had I didn't qualify for which was work assignment PRD-503 'Head Production Cook.'" (*Id*. at PageID.408.) Plaintiff did not name Clothfelt or Schubring in any of the grievances.

Defendant argues that to the extent grievance JCF-18-10-2139-28e "may be read as alleging unfair treatment and discrimination, [it] did not sufficiently identify [Clothfelt] or Schubring, and it was rejected at Step I as untimely, and the rejection was upheld through Step III." (ECF No. 48, PageID.363) (citing ECF No. 48-2, PageID.39-42.)) Indeed, the grievance rejection was upheld at Step III. (*Id*. at PageID.411.) And it is true that Plaintiff does not name either Defendant in this particular grievance, (*Id*. at PageID.412), nor does he in any other grievance. Finally, as Defendant argues, it also appears to be true that Plaintiff does not directly identify discrimination as a factor regarding his employment— he writes only that the "employees have not had training in race relations" and that he "tried many times talking with staff members that was involved in [his] situation about [his] issue [he] was discriminated against by some staff," but then goes on to name the staff who discriminated against him as "ex Rum" and "Ms. Kiazor" and he does not identify what his

"issue" is in this grievance. (*Id*. at PageID.412.)  In this same grievance at the Step I level, Plaintiff refers to his being treated differently and racial discrimination but does not name either Defendant and does not mention a job in the kitchen, or anything of the sort. (*Id*. at PageID.414.)

As in *Ashley v. Boayue*, No. 19-10484, 2020 WL 5985203, at *6 (E.D. Mich. Feb. 18. 2020), "Paragraph R of the MDOC's Policy Directive provides that an inmate seeking to file a grievance must identify, among other details, the 'names of all those involved in the issue being grieved . . ..'" The only remaining claims left in Plaintiff's case at this stage are claims that he was passed over for a job in favor of white prisoners as against Clothfelt and Schubring. (*See* ECF No. 14.) Neither of those individuals are named in Plaintiff's grievances. Thus, I suggest that Plaintiff has not properly exhausted his administrative remedies as against these two individuals.

In response, Plaintiff cites to several cases in support of his position that a threat deterred him from "pursuing part of the grievance process." (ECF No. 50, PageID.448) (citing *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009); *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008); *Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003); *Williams v. Snyder*, 150 Fed. Appx. 549 (7th Cir. 2005); *Nei v. Dooley*, 372 F.3d 1003 (8th Cir. 2004)). Citing these cases, Plaintiff essentially argues that he did not name certain individuals for fear of retaliation from prison employees. (*Id*.) However, these cases are easily distinguishable from the present one. For example, in *Turner*,

> two days after Turner submitted his formal grievance, Warden Tydus Meadows called him "to security." When Turner arrived, Meadows was holding the formal grievance form Turner had submitted, and said, "Oh—you're the one that got

shocked!" The warden told him, according to Turner: "that if I didn't like the way they did things around here he would put my ass in the van with inmate Johnson and transfer me so far south that I would never be able to see my family again till I got out of the Georgia Prison System." Meadows then tore up Turner's complaint in front of him and said that he "had better not hear of another grievance or lawsuit pertaining to [Turner] getting shocked."

*Turner*, 541 F.3d at 1081. Based on those threats by the prison employee, the court held that

a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

*Id*. at PageID.1085. Facts of threats from any prison employees, or specifically from Clothfelt or Schubring, are not alleged here. Thus, I suggest that this argument from Plaintiff that he was unable to exhaust his remedies out of fear is meritless.

Because Plaintiff failed to specifically identify Clothfelt or Schubring in his grievances, I recommend that Defendants' Motion be granted for lack of exhaustion.

### F.    Plaintiff's Motions

Next, I will address the two pending Motions brought by Plaintiff. Plaintiff filed a Motion for Appointment of Counsel (ECF No. 47) and a Motion to Strike. (ECF No. 53.) Given the above analysis and recommendation granting Defendants' Motion for Summary

Judgment, I also recommend that these two Motions brought by Plaintiff are now moot and should be denied as such.

However, for thoroughness, the undersigned will briefly analyze these Motions.

Although federal district courts have the discretion under 28 U.S.C. § 1915(e)(1) to "request an attorney to represent any person unable to afford counsel," there is no constitutional right to court-appointed counsel in a civil case. *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *Abdur-Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489, 492 (6th Cir. 1995). The decision rests in the district court's sound discretion and will be overturned only if it impinges fundamental due process rights and amount to an abuse of discretion. *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992); *see also Richmond v. Settles*, 450 F. App'x 448, 452 (6th Cir. 2011).

The appointment of counsel is only justified by exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993). In determining whether exceptional circumstances are present the court must consider the nature of the case, the complexity of the factual and legal issues involved, and the plaintiffs' ability to represent themselves. *Id.* at 606; *see also Shavers v. Bergh*, 516 F. App'x 568, 571 (6th Cir. 2013); *Garrison v. Michigan Dep't of Corrections*, 333 F. App'x 914, 917-18 (6th Cir. 2009). The complexity of the case and the plaintiffs' ability to handle it are "separate and distinct considerations." *Kensu v. Rapelje*, No. 12-11877, 2014 WL 585328, at *2 (E.D. Mich. Feb. 14, 2014).

If the claims are frivolous or have "extremely slim" chances of success, the court should not appoint counsel. *Richmond*, 450 F. App'x at 452. Courts may also decline to appoint counsel where a case has not progressed far enough to assess its merits. *See, e.g.,*

13

*Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (upholding denial where the magistrate judge thought "it was too early to assess the merits of the claim"). Nonetheless, a plaintiff "is not entitled to the appointment of counsel merely because his case may proceed to trial." *Gresham v. Granholm*, No. 2:09-cv-231, 2012 WL 3126781, at *5 (W.D. Mich. July 31, 2012) (citing *Lince v. Youngert*, 136 F. App'x 779, 782-83 (6th Cir. 2005); *see also Zibbell v. Marquette Cnty. Res. Mgmt.*, No. 2:12-cv-302, 2013 WL 625062, at *13 (W.D. Mich. Feb. 20, 2013) (noting that the procedural posture of case is a consideration).

Plaintiff's complaint and subsequent motions demonstrate that he has the ability to clearly state his claims and cite caselaw in support of his claims. Further, based on the above analysis regarding the exhaustion of administration remedies, it appears that this case does indeed have "extremely slim" chances of success. *Richmond*, 450 F. App'x at 452. Finally, I suggest that the claims in this case are not so complex or unwieldy as to require counsel.

Next, Plaintiff moves to strike Defendants' reply to his response regarding their Motion for Summary Judgment. (ECF No. 53.) Plaintiff argues that it should be stricken from the record because it was filed "approximately 15 days after the July 8, 2021, court ordered deadline." (*Id*. at PageID.494.)

Plaintiff is correct that Defendants' reply was due to be filed on July 8, 2021 and was not filed until July 23, 2021. (ECF No. 52.) However, I first note that neither party appears to have been prejudiced by this short delay. And as in *Crouch v. Rifle Coal Company, LLC*, No. X, 2010 WL 11527033, at *1 (E.D. Ky. June 30, 2010), "The defendant, on the other hand, is not prejudiced by admitting these exhibits. In fact, the

14

defendant has already responded to them in its response brief. See R. 130 at 4-5. While the Court is not aware of the reason for this particular delay, it was short and did not delay these proceedings." The same is true here in that the delay was short and caused no apparent prejudice to either party. Even considering the delay, I suggest the reply should not be stricken:

> Local Rule 7.1(e)(2)(C)[4] provides that reply briefs must be filed "within 14 days after service of the response, but not less than 3 days before oral argument." On the other hand, the district court has the authority to extend the time for the filing of a reply brief if there is competent evidence that the allegedly offending party had committed acts of excusable neglect. Fed.R.Civ.P. 6(b).

*Dealer Computer Services, Inc. v. Dale Spradley Motors, Inc*., No. 11-11853, 2011 WL 4737586, at *1 (E.D. Mich. Oct. 5, 2011).

"The controlling legal standard for evaluating proclaimed evidence of excusable neglect necessitates the balancing of five factors[.]" *Id*. These factors include: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on the judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." *Id*. (citing *Engineering and Manufacturing Services, LLC v. Ashton*, 387 Fed. Appx. 575, 582 (6th Cir.2010)).

---

[4] I note that the relevant Local Rule is now 7.1(e)(2)(B); however, the language is the same as that cited in *Dealer Computer Services, Inc. See* LR 7.1(e)(2)(B), "If filed, a reply brief supporting such a motion must be filed within 14 days after service of the response, but not less than 3 days before the motion hearing."

First, as previously discussed, there is no evidence that this late filing caused any prejudice to either party. This factor weighs in favor of allowing the merits of Defendants' reply, "albeit untimely, to be evaluated by the Court." *Id*.

Second, the delay was not a considerable one—it was less than a month in total that the filing was delayed. No hearings are scheduled in this case. This factor also weighs in favor of admitting the Plaintiff's untimely answer.

With regard to the third and fourth factors, Defendants do not provide a reason for the delay "or reason for the Court to believe that it was beyond its control." *Id*. Defendants have not responded to this and do indicate that it was not untimely filed in bad faith, however, there is nothing to indicate that it was.

In summary, the Court finds that none of the above factors suggest Defendants' reply should be stricken for being untimely. Therefore, the Plaintiff's motion to strike the untimely reply should be denied.

### G.    Conclusion

For the reasons discussed above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment, (ECF No. 48), be **GRANTED**, and that Plaintiff's Motion to Appoint Counsel (ECF No. 47) and Motion to Strike (ECF No. 53) be **DENIED** as moot.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed.

R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  September 29, 2021                    S/ PATRICIA T. MORRIS
                                             Patricia T. Morris
                                             United States Magistrate Judge